## Case No. 16,327.

UNITED STATES v. SMITH.

[3 Cranch, C. C. 66.] [1]

Circuit Court, District of Columbia. Dec. Term, 1826.

IMPRISONMENT FOR DEBT— DISCHARGE — PAYMENT OF POUNDAGE—AGREEMENT WITH MARSHAL.

A debtor of the United States had been discharged from custody by order of the president of the United States under the act of the 3d of March, 1817, and had entered into an agreement with the marshal for payment of his poundage fees by instalments, with a proviso that if any instalment should not be paid when due, the marshal should take out a new ca. sa. for his fees. *Held* that he could not be detained upon the new ca. sa.; and the court refused to order him to be committed.

The defendant [John K. Smith], upon being ordered by the president of the United States to be discharged from a ca. sa. issued for a debt due to the United States, and being still holden in custody by the marshal for his poundage fees, which amounted to more than $4000, agreed with the marshal to pay those fees by instalments, and that if he should make default, the marshal should obtain a new ca. sa. and arrest him again. He made default and the marshal took out a new ca. sa. in the name of the United States for his fees. Upon this new ca. sa. he was arrested and brought into court, and prayed to be committed.

Mr. Key, for defendant, objected, that the defendant having been discharged by order of the president of the United States under the act of March 3, 1817, 3 Stat. 399, entitled "An act supplementary to an act for the relief of persons imprisoned for debts due the United States," could not be arrested again for the same cause. The marshal having relinquished the hold he had upon the person of the defendant, could only resort to his action upon the new agreement. After the principal debt has been paid this court has decided, in the case of Causin v. Chubb [Case No. 2,527], at December term, 1805, that the marshal cannot detain the defendant for his poundage fees.

Mr. Lear, for the marshal, contended that that was the case of a ca. sa. under the Maryland law, entered "Not called by consent," in which case the plaintiff may always have a new ca. sa.

But THE COURT (nem. con.) refused to order the defendant to be committed.

## Case No. 16,328.

UNITED STATES v. SMITH.

[4 Cranch, C. C. 629.] [1]

Circuit Court, District of Columbia. Nov. Term, 1835.

GAMING—CONSTRUCTION OF STATUTES.

The first and twelfth sections of the penitentiary act of the District of Columbia, so far

[1] [Reported by Hon. William Cranch, Chief Judge.]

as they relate to the offence of keeping a faro-bank, or other common gaming-table, are to be construed together; and, when so construed, they contain a complete description of the offence and its punishment.

This was an indictment [against Henry Smith] under the act of congress of March 2, 1831 (4 Stat. 448), entitled, "An act for the punishment of crimes in the District of Columbia," commonly called the "Penitentiary Act." The offence charged was the keeping "a common gaming-table, called a 'sweat-cloth.' "

The defendant having been convicted, his counsel, Mr. Dandridge, moved, in arrest of judgment, contending that the term "gaming-table," in the twelfth section of the act, was too vague and indefinite to support an indictment, and must be confined to the single offence of keeping a "faro-bank;" as the English statute against stealing "sheep or other cattle," was confined to the stealing of sheep; and the statute against stealing horses did not include a man who stole only one horse. 1 Bl. Comm. 88; 6 Bac. Abr. tit. "Statute"; Plow. 465. It was also contended, that, in the twelfth section, the words "faro-bank or gaming-table," mean nothing more than faro-bank; the words "or gaming-table" being only expletive of the term "faro-bank."

Mr. Key and Mr. Carlisle, contrà, contended, that, in considering a statute, the intention of the legislature is the only sure guide to its construction, and that the first and the twelfth sections are to be construed together, so as to read, "a faro-bank or other common gaming-table."

THE COURT (THRUSTON, Circuit Judge, contrà) refused to arrest the judgment.

CRANCH, Chief Judge, delivered the opinion of the majority of the judges, as follows: This is an indictment for keeping "a certain common gaming-table, called a 'sweat-cloth,' against the form of the statute in such case provided, and against the peace and government of the United States."

The jury having found the defendant guilty, his counsel has moved, in arrest of judgment, and contends that this indictment is under the twelfth section of the penitentiary act of March 2, 1831, by which it is enacted "that every person duly convicted of keeping a faro-bank or gaming-table, shall be sentenced to suffer imprisonment and labor for a period not less than one year, nor more than five years." That the words "gaming-table" are too general, and will not maintain an indictment; and that, if any offence can be punished under that branch of the statute, it is only the offence of keeping a faro-bank. That there is no punishment, provided by the statute, for the offence of keeping a common gaming-table; and that the words "or gaming-table" are intended to be used as synonymous with "faro-bank," and are merely expletive, not cumulative. That the statute ought to be construed strictly, like the statute against stealing "sheep or